UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION,

       Plaintiff,

v.                                 Case No:   6:14-cv-1105-Orl-37TBS

ATTORNEYS TITLE INSURANCE FUND,
INC.,

       Defendant.

_____

## ORDER

This case comes before the Court without oral argument on Defendant's Motion to Strike Plaintiff's Expert (Doc. 30) and Plaintiff, Federal Deposit Insurance Corporation, as Receiver for IndyMac Bank, F.S.B.'s Opposition to Defendant, Attorneys' Title Insurance Fund, Inc.'s Motion to Strike Plaintiff's Expert (Doc. 39).   For the reasons that follow, Defendant's motion is due to be **DENIED**.

## I. Background

Plaintiff Federal Deposit Insurance Corporation as Receiver of IndyMac Bank, F.S.B. ("FDIC" or "Plaintiff"), brought this action against Defendant Attorneys Title Insurance Fund, Inc. ("ATIF" or "Defendant"), for breach of closing protection letters it issued to IndyMac Bank, F.S.B. ("IndyMac") in connection with two residential loan transactions for which Nate Hoskins, P.A. was the closing agent (Doc. 1, ¶ 1).   Plaintiff alleges that Hoskins failed to comply with IndyMac's closing instructions and/or committed fraud and dishonesty in connection with the closings, thereby entitling IndyMac to reimbursement under the closing protection letters (Id. at ¶ 3).   Plaintiff alleges that

Hoskins, as ATIF's approved agent, failed to comply with closing instructions by failing to collect the borrowers' required funds from the borrowers themselves, collecting the borrowers' required funds to close from the sellers of the properties, submitting false HUD-1 statements for IndyMac's approval, and disguising the misuse of IndyMac's loan proceeds (Id. at ¶¶ 48, 92).   Hoskins also closed on the loans despite knowledge of other transactions involving the borrowers within days of closing and failed to notify IndyMac of the transactions, as required by the closing instructions (Id.).   Plaintiff alleges that Hoskins knew the borrowers were involved in undisclosed transactions because he provided closing services for those transactions (Id. at ¶¶ 36, 75, 79).

ATIF allegedly breached the closing protection letters by not reimbursing Plaintiff for the actual losses it incurred as a result of Hoskin's fraud, dishonesty, and/or breach of the closing instructions (Id. at ¶¶ 49, 93).   The closing protection letters provide in part:

> Attorneys' Title Insurance Fund, Inc.… hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by [Nate Hoskins, P.A.], when such loss arises out of:
>
> > 1.   Failure of [Nate Hoskins, P.A.] to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such claims or title or lien, or (b) the obtaining of any other document, specifically required by you, ... or (c) the collection and payment of funds due to you, or
> >
> > 2.   Fraud or dishonesty of [Nate Hoskins, P.A.] in handling your funds or documents in connection with such closing.

(Id. at ¶¶ 46, 90 (alteration in original)).

Plaintiff has retained J. Richard Harris to provide an expert opinion in this matter.

Defendant has moved to strike Harris' report and testimony pursuant to FED. R. EVID. 702

and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

## II. Discussion

Rule 702 governs the use of expert testimony:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence
> or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and
> methods; and
>
> (d) the expert has reliably applied the principles and methods
> to the facts of the case.

FED. R. EVID. 702.

The Rule confers on trial judges the role of "gatekeeper" when considering the use

of expert testimony.   Daubert, 509 U.S. at 597.   The trial court's gate-keeping role is

two-fold.   First, it must determine whether the proffered testimony is reliable.   See id. at

590.   The reliability assessment focuses on whether the reasoning or methodology

underlying the testimony is scientifically valid.   Id.   The expert's testimony must be

grounded in the methods and procedures of science and must be more than unsupported

speculation or subjective belief.   Id.   "Thus, the proponent of the testimony does not

have the burden of proving that it is scientifically correct, but that by a preponderance of

the evidence, it is reliable."   Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th

Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3rd Cir. 1994)).

The Supreme Court in <u>Daubert</u> set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.   <u>Daubert</u>, 509 U.S. at 593-94.   <u>See also McClain v. Metabolife Int'l, Inc.</u>, 401 F.3d 1233, 1251 (11th Cir. 2005).   The Court in <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), stressed that in assessing the reliability of expert testimony, whether scientific or otherwise, the court may consider one or more of the <u>Daubert</u> factors when doing so will help determine the expert's reliability.   <u>Kumho Tire</u>, 526 U.S. at 150.   The test of reliability is a "flexible" one and the four <u>Daubert</u> factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case.   <u>Id.</u> (quoting <u>Daubert</u>, 509 U.S. at 593); <u>see also United States v. Frazier</u>, 387 F.3d 1244, 1297 (11th Cir. 2004).   The particular factors will depend upon the unique circumstances of the expert testimony involved.   <u>See Kumho Tire Co.</u>, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue.   <u>See Daubert</u>, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial.   <u>See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.</u>, 582 F.3d 1227, 1232 (11th Cir. 2009).   Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role is not intended to supplant the adversary system or the role of

the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The judge's role is simply to "keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999).

Defendant's motion is a combined Daubert motion and motion *in limine*. To the extent it is a Daubert motion, Defendant does not challenge Harris's qualifications as an expert. Instead, Defendant argues that Harris did not employ a reliable methodology in forming his opinions and that his opinions will not assist the trier of fact. Defendant's arguments are not well taken.

Harris has been a licensed real estate attorney and closing agent in Florida for over 40 years and he has 35 years of experience as a closing agent for ATIF (Doc. 39, pp. 2, 4). In forming his opinions, he reviewed a copy of the complaint and thousands of pages of loan files and banking records to come up with a set of assumed facts (Doc. 30-3, pp. 7, 9). Harris then applied his education and experience to the assumed facts to "render an opinion on … the issues framed by the complaint." (Id.). He described the closing process and the tasks closing agents carry out in a real estate closing, including completing specialized forms and communicating information to the lender, and opined how Hoskins failed to comply with those standards.

Defendant argues that Harris' methodology is not sufficiently reliable because "comparing the closing agent's conduct to the terms of the closing instructions and CPLs" is "the very same thing the jury will be asked to do." (Doc. 30, pp. 3, 15). But, Defendant acknowledges that Harris also "compar[ed] Hoskins actions to what Mr. Harris

would have done under similar instructions." (Id.).   Harris has specialized knowledge and experience as a real estate attorney and particularly as a closing agent for ATIF that will help the jury understand the evidence and determine whether Hoskins failed to comply with IndyMac's closing instructions.   Although the average lay person may have some knowledge about residential real estate closings, Harris can explain to the jury, *inter alia*, the purpose of the closing documents, what the closing documents consist of, the applicable standard of care, and whether the closing documents in this case accurately reflect the transactions.   See Frazier, 387 F.3d at 1262 (To assist the jury, the evidence must "concern matters that are beyond the understanding of the average lay person.").

Now, the Court finds that Harris's methodology in applying his education and experience to the stated assumed facts is sufficiently reliable and that his methodology can be properly applied to the facts at issue.   It would therefore be improper to strike his report in its entirety.   Defendant's motion to strike Harris's report is therefore **DENIED**. That said, the Court has reservations about the admissibility of portions of Harris's report and testimony.

Much of Defendant's argument is directed at the admissibility of specific portions of Harris's report, including his opinions about what the applicable law is; Hoskins' knowledge, intent, motive, mental state, dishonest conduct, reckless disregard of duties, and commission of fraud; IndyMac's knowledge, intent, motive, mental state, and expectations; whether Hoskins breached the closing protection letters; what damages Plaintiff is entitled to; his interpretation of the closing protection letters; Hoskins owing IndyMac a fiduciary duty; and what a fiduciary duty is.[1]   These portions of Defendant's

---

[1] Plaintiff "agrees that certain of the verbiage in Harris's report, including his headings stating that 'ATIF has liability under the terms of' the various CPLs and his conclusions that 'ATIF is obligated to reimburse Bank for actual loss sustained by Bank as a result of the fraudulent or dishonest conduct' by the closing agents,

motion are better dealt with by a motion *in limine* filed closer in time to the trial.

Accordingly, to the extent that Defendant's motion is a motion *in limine* it is **DENIED**

**without prejudice** to renewal closer in time to, or during the trial.

        **DONE** and **ORDERED** in Orlando, Florida on November 4, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

exceeds the limits of permissible expert opinion."   (Doc. 39, p. 12).   Plaintiff represents that it "has no intention of eliciting these types of opinions from Harris at trial."   (Id.).